MARIE SONKSEN, APPELLANT, *v.* ERNEST J. PRIMM, RESPONDENT.

No. 3843

April 7, 1955.                         281 P.2d 987.

*Wilson and Brown,* and *John S. Belford,* of Reno, for Appellant.

*Vargas, Dillon and Bartlett,* of Reno, for Respondent.

## OPINION

By the Court, MERRILL, C. J.:

This is an action upon an assignment to recover sums due thereunder. The trial court, holding that no sums remained due and unpaid, rendered summary judgment in favor of the defendant. The plaintiff has taken this appeal. Whether or not sums remain due and unpaid turns upon the meaning which should attach to one word used in the assignment: the word "distributable." The parties are in dispute upon this point and this is the sole issue presented by the appeal.

In 1943 respondent assigned to one Rummel "one percent of the net profits of that certain business located in the City of Reno, County of Washoe, State of Nevada, known and designated as the Palace Club, distributable to Ernest J. Primm." Rummel has since died and appellant has succeeded to his interest under the assignment. By the terms of the instrument its effect terminated upon Rummel's death.

This action is brought for an accounting of undistributed profits as of the termination of the assignment and to recover one percent of the assignor's share thereof. The complaint alleges in part that at the time of Rummel's death the partnership held, as undistributed profits of said business, "a large sum of money, the exact amount of which is unknown to plaintiff but which is

well known to defendant"; that defendant's share of said net profits has long since been distributed to him.

The Palace Club, at all material times, was operated as a partnership business. Respondent assignor was one of four partners. He contends that the "distributable" profits contemplated by the assignment are those actually distributed to him by the partnership or those set apart by the partners for such distribution. Upon motion for summary judgment it appeared that Rummel, at the time of his death, had received his assigned one percent of all profits which to that date had been set apart by the partners for distribution to respondent. The trial court, in granting summary judgment, apparently adopted respondent's construction of the word "distributable."

Appellant contends that "distributable" profits as contemplated by the assignment are those capable of being distributed whether actually distributed or not and whether the partners had elected to distribute them or not. She contends that by the assignment respondent transferred one percent of his distributive share of the net profits of the concern—one percent of the net profits to which he was entitled as a matter of law; that the phrase in which the word appears had been used simply to limit the assignment to respondent's share in the profits and make clear that the assignee could not claim one percent of the entire Palace Club profits. We agree that this is the proper construction and in accordance with customary usage of the word. In Webster's New International Dictionary, the suffix "-able" is defined as follows: "An adjective suffix used passively with implication of capacity, fitness or worthiness to be acted upon as in *readable,* capable of being read; *credible,* capable of being believed; *soluble,* capable of being solved; *edible,* fit to be eaten; *lovable,* worthy to be loved. This is now the usual sense of the suffix in English."

Respondent contends that under the circumstances of this case such a construction is not reasonable. He points

out that it is established by the record that the partnership practice was never to make distribution of profits until the partners had agreed so to do and had expressly fixed the extent of such distribution. He urges that since he himself could not have compelled a greater distribution than that agreed upon, his assignee should have no greater rights.

However, the limitation upon respondent's right to receipt of his full share of profits was due only to his voluntary arrangement with his partners as to the manner in which those profits might, from time to time, be received and enjoyed without prejudice to the going concern—a business arrangement necessary to all partnerships. Such arrangement, in proper perspective, is not a limitation upon a partner's right to profits, but is, rather, a collateral agreement as to the extent of cash which each partner shall continue to make available for current business operations. As between partners, all of whom share both the right to profits and the independent obligation to maintain an operating cash balance, the obligation is simply set off against the right. An assignee of the right, having no share in the obligation, receives his right free from such set-off.

In our view, then, the circumstances of the case lend support to appellant's, rather than respondent's, construction of the word "distributable." Indeed it might well be regarded as unreasonable to attribute to the assignee an intent that his property rights, otherwise ascertainable as a matter of cold figures, could be made to depend upon the whim or personal cash needs of persons, one of whom is the assignor himself.

Upon the record before us and the question presented for our determination, appellant is entitled to an accounting as prayed.

Reversed and remanded for further proceedings. Costs to appellant.

BADT and EATHER, JJ., concur.